# Carney *v*. The State.

*Prosecution for Abandonment of Family.*

1. *Abandonment of family; Code of 1886, § 4047.*—To come within the meaning of the statute providing punishment for abandonment of family, it is not necessary that the danger of becoming a burden on the public, in which the abandonment of the husband or parent places his family, must be immediate or imminent, and not dependent on any future contingency, however probable in the ordinary course of events. It is a question for the jury, whether, under all the circumstances of the case, the abandoned family would probably become a burden on the public by reason of a contingency likely to happen within a reasonable time, and in the ordinary course of events.

2. *Same; evidence.*—Facts bearing proximately on the probability of the abandoned wife becoming a burden on the public are admissible in evidence in a prosecution for abandonment of family.

3. *Same; wife's infidelity.*—Abandonment is not excused by suspicion of the wife's infidelity based on rumors, or hearsay evidence. Hearsay and remote evidence of such infidelity will be excluded on trial for abandonment.

APPEAL from Mobile City Court.

Tried before Hon. O. J. SEMMES.

This was a prosecution for abandoment of wife and child. The witnesses for the State testified that William Carney, an able bodied man and able to support his wife, was married to Kate Nicholas in February, 1886, and lived with her eight days and then abandoned her; that said Kate Nicholas was the mother of a child before she married the defendant, and that after the marriage the defendant admitted that he was the father of the child; and that the child and mother had been supported and maintained, both before and after the marriage of the mother, by her brother-in-law.

The defendant testified, that after he had been married eight days he had to leave home to sit up with his brother's corpse; that he was absent from home all one night and until about twelve o'clock the night following; that his clothes got wet and he went home to get some dry clothes; that his wife

[Carney v. The State.]

came to the front door in her night clothes and let him in; that when he got in he found his bed-room door ajar, and went in there; that when he went in he saw some man's shoes by the fire-place and asked whose they were, and his wife replied that they were her brother's shoes; and about that time he heard some one move in the bed and as he looked around a man turned his face toward the wall and pulled the cover of the bed over his head; that the cover on the outside of the bed was thrown back and the bed looked as if two persons had been occupying it; that he took his clothes and left, and never went back. The defendant also denied that he was the father of his wife's child. A brother of defendant's wife testified, in rebuttal, that he slept in his sister's bed that night until two or three o'clock; that he lived in the same house with his sister.

The defendant also produced evidence, by cross-examination of the State's witnesses, that his wife was a woman of good health and had been supported, both before and ever since her marriage, comfortably and well by her brother-in-law, and she was still being so supported. The State asked the witness, Judge, who so supported the defendant's wife, whether he also supported his mother? The defendant objected to this question, but the court overruled the objection. The witness answered that he did.

The defendant then offered to testify that he went, in consequence of a message that he had received, to an assignation house in search of his wife, and was refused admittance, but while watching from the outside, heard female voices within and saw a woman, whom he believed to be his wife, step out the back way and get over the fence, and that the keeper of such assignation house subsequently told the defendant that such woman was his wife, and that she frequently visited such house of prostitution. This was before the defendant saw a man in the bed of his wife. But the court refused to allow him to so testify.

There was a variance between the testimony of the witness, Judge, and that of his wife, both of whom were State's witnesses, as to the health of the defendant's wife; the witness, Judge, testified that it was not good, while his wife testified to the contrary; the defendant asked said Judge whether or not his wife had as good an opportunity of judging of the same as he himself had. The court sustained an objection to this question.

[Carney v. The State.]

The court refused to give two charges requested by defendant, which, in substance, are set out in the opinion.

G. L. & H. T. SMITH, for appellant.—If the wife has a support and is not in danger of becoming a burden on the public, defendant is not guilty.—*Taylor's Case*, 59 Ala. 19. The evidence that Judge supported his mother was irrelevant and immaterial and calculated to prejudice the jury against defendant.—8 Port. 511; 3 Ala. 679; 30 Ala. 672; 31 Ala. 53; 40 Ala. 259; 42 Ala. 51; 42 Ala. 74. The court erred in excluding evidence of what defendant heard and saw at the assignation house.—*Boulo's Case*, 49 Ala. 24; *Taylor's Case*, 59 Ala. 19; Code of 1886, § 4047.

T. N. McCLELLAN, Attorney-General, *contra*.

SOMERVILLE, J.—The defendant was tried and convicted for abandoning his family and leaving them in danger of becoming a burden to the public—an offense which is made punishable by fine and imprisonment under the provisions of the statute.—Code, 1886, § 4047; Code, 1876, § 4218.

The two charges requested by the defendant, and refused by the court, assert in effect that the statute must be construed to mean that the danger of becoming a burden to the public, in which the abandonment of the husband or parent places his family, must be immediate, or imminent, and not dependent on any future contingency, however probable in the ordinary course of events. This construction, in our judgment, is not tenable. The members of the defendant's family whom he is here charged with having abandoned are his wife, and a child of tender years. They were thrown upon the charity of a brother-in-law of the wife, who possessed but meager means and was under no legal liability whatever to furnish them maintenance. The evidence tended, moreover, to show that the wife and child owned no property, and were unable to support themselves, either for want of ability, or opportunity. It was for the jury to say whether the evidence satisfied them beyond a reasonable doubt that the defendant's family, under all the circumstances of the case, would probably become a burden to the public by reason of any contingency likely to happen, within a reasonable time, and in the ordinary course of events. Such contingency need not be immediate, nor ought it to be

too remote or speculative. It should be one that may be reasonably apprehended between these two extremes of time.

The instructions requested on this point were properly refused.

The statute can not be construed to make it criminal for one to abandon his wife under any and all circumstances. If she be guilty of adultery, as the evidence tends to show the defendant's wife was in this case, he would certainly be excused in leaving her as a preliminary step to making application to the Chancery Court for a divorce on this ground. To continue this marital relation with her, after information of her guilt, would be a condonation of it, and would operate to bar his right to claim a severance of the marriage tie. There can be no guilt where there is legal excuse or justification for the act charged. But while this is true, abandonment is not excused by mere suspicion of the wife's infidelity based on rumors or other hearsay evidence. It is not enough that he may have been informed of alleged facts by others which would justify him in believing her to be guilty. The risk of abandonment is his own. The fact of her guilt must be shown, and the burden is on the husband to show it. The Circuit Court properly excluded all the evidence relating to what occurred at a certain assignation house kept by one Cora Levy, a prostitute, and her declaration made to the defendant regarding his wife. This was all hearsay, except the statement that defendant went to the house, and was refused admission; that he heard the voice of women in the house, whose identity the keeper attempted to conceal; and that defendant saw some unknown female clandestinely escaping from the premises by the back way. This evidence did not tend to identify this female as the defendant's wife, being too remote for this purpose. Any woman, not a common prostitute, found in such a place, would probably seek to escape observation by strangers who might persist in entering the premises uninvited.

It was competent to prove that the defendant's wife, Mrs. Carney, had not earned her living since the birth of her child, and also that her brother-in-law, Judge, who was supporting her had as many as four children, and was also supporting his own mother. These facts all bore on the question as to the probability of Mrs. Carney becoming a burden to the public, because it tended, on the one hand, to rebut the inference that she was able to maintain herself, and, on the other, to show the difficulty attending the ability

of her brother-in-law to maintain her by continuing the exercise of his charity towards her. It was for the jury to say what was the probability of the termination of this benefaction, which was of grace and not of legal duty.

The rulings of the court are free from error, and the judgment must be affirmed.